May it please the court, Assistant United States Attorney Ron Johnson. My name is Harlan Kimura and I represent the appellant defendant, Mr. Erik Glenn Ledford. May I reserve two minutes for rebuttal? Sure. The clock counts down, so keep track. We'll try to help you do that, but sometimes we get carried away with our questions. But in any event, we'll make sure you get a chance to respond. Thank you, Your Honor. Based upon the briefing of the parties, the three issues for this appeal would be, number one, whether the clear and convincing standard should be applied in the sentencing for the amount of fraud loss as well as the number of victims. The second issue is whether the district court was clearly erroneous in finding that there were over $200,000 of fraud loss and 50 or more victims. The third issue is whether the appellate waiver provision in the plea agreement of Mr. Ledford permitted Mr. Ledford to argue in this appeal and challenge the restitution amounts and the number of victims. In regards to the first issue, there is the court's case of United States v. Staten, which recognizes a specific exception to the general preponderance of the evidence standard to resolve factual disputes at sentencing. Go ahead. On that ground, I thought the district judge said, I'm going to apply the clear and convincing evidence standard, even though I'm not sure I have to. So is your argument that the judge did apply it, but that the evidence wasn't sufficient to establish it, or is your argument that the judge didn't apply it? Maybe I misread the record. Your Honor, actually, the judge did apply or did state that it was applying the clear and convincing standard. I only brought this up because it was being raised as an issue by the government. However, I just wanted to put that out there. So that ---- So you both agree that the clear and convincing standard was applied. I'm not asking your opponent to stand up. I'm saying you at least agree that the clear and convincing evidence standard was applied in this case as to the amount of loss by the district judge. Well, Your Honor, I agree that that's what the court said, that it was applying the clear and convincing evidence standard. You don't think the evidence met that standard. Is that your point? Yes, I'm sorry. That's more specifically what I meant. But did you say it wouldn't have met the preponderance standard, so that's why it's important? Yes, because as the district court mentioned when it was giving its oral ruling, it did say that, well, it doesn't feel as though the preponderance of the evidence standard was met, but definitely the ---- No, I'm sorry. So if we found that the preponderance standard was correct, as the government argues, then your client loses on that point? I mean, I guess I'm trying to figure out whether it makes any difference what standard we look at. We would argue that it doesn't make any difference because in regards to what was presented at the sentencing hearing, you have the affirmative declaration of six merchants who stated under penalty of perjury, four of them under penalty of perjury, that we did not suffer any losses, actual or attempted. Plus, there was the admission by the case agent for the government who basically said that some of these on the list of merchants were not the victims. And so that's sort of inconsistent because if some of them suffered credit card losses, then their declarations were correct that they didn't suffer any losses, right? Yes. So if a credit card was used instead of the gift card, then the victim, I think your argument is, your victim would have been the credit card holder or the bank. So the merchant would not have been the victim. So the fact that some of the merchants said we weren't the victim is consistent with the credit card loss issue. Yes. In regards to that, and as admitted to by the case agent, some of the victims were actually the banks that may have paid on it or the credit card companies. And I did refer to the loss would have been that there still had been that loss, that amount of loss. Correct? Whether it was the merchant who was the victim or the bank that was the victim or the individual credit card holder that was the victim, that wouldn't affect the loss amount. There would have been a loss, but, yes, it would affect the victim amount, yes. The number of victims. But getting to your appellate waiver, I just don't see where there's any reservation of an ability to appeal the calculation of the number of victims. And maybe you could point me to the language in the plea agreement. Your Honor, it does not specifically state that. However, it necessarily applies because if we only argued that the fraud loss should have been less than what the court determined, it would necessarily mean that there would be less victims. Why? I didn't understand that part of your argument. Couldn't the amount of each transaction have been different than what the court determined? I'm sorry, I missed that. Well, I mean, I read it I think the same way Judge Akuta is suggesting, which is that you reserve the right to challenge the amount of loss because maybe one credit card fraud was $50 and the judge found it to be $50,000. But did you reserve the right to challenge the number of victims? In the appellate waiver, it was not specifically stated in there. But as I was arguing, if you, for instance, if you were successful in disallowing all of the losses, then there would be no victims. And so it necessarily applies that the appellate waiver would include not only the restitution amount as well as the number of victims. So I would agree to this. I guess I'm still not understanding that. So if you have a certain amount of loss, $100,000, and you want to say that was erroneous, you could say some of the victims weren't victims, but the loss could stay the same. So in other words, some of the merchants, if you argue, some of the merchants didn't actually suffer a loss because they got paid by the credit card via credit card. So the number of victims may have been smaller because it was the same bank that issued all of these credit cards. But even if the loss amount is reduced, that doesn't necessarily mean that there's a change in number of victims, more or less. And without specifically reserving the right to challenge the number of victims, I just don't see how that isn't covered by the appellate waiver. In other words, the amount of loss is not dependent on the number of victims. You could have one victim that suffered everything. Yes, Your Honor. It doesn't necessarily equate one for one. However, if you do disallow some of the losses, it would necessarily follow that there may be a, not necessarily a proportionate, but some reduction in. Well, but let me try it differently. You certainly reserve the right to claim that Mr. X or Merchant Y didn't suffer any loss because that's a number that would be used to calculate the total. But did you reserve the right to claim that these were not victims? In other words, I understand your loss theory, which is a separate issue, which is that if the merchant didn't lose any money because the credit card company reimbursed him or because he couldn't find a record of it, we can't count that as a loss. But it does seem to me the two are independent. You can challenge amounts. That's what you reserve, but not the number of victims. Your Honor, I was not the attorney that negotiated the terms of the appellate waiver in the plea agreement. I can only ---- Yes, we're reading it the same. We have the same ---- we come into it the same way that you do. We're trying to read it on its face and determine what it waives and what it doesn't. And it doesn't seem to reserve the right to challenge the number of victims. I mean, you know, that's what we're struggling with. I would agree with Your Honor that, yes, specifically it doesn't state that. But our argument would be it necessarily applies. It's implied. And may I reserve the rest of the time for rebuttal? Yes, of course you may. Yeah. Thank you. May it please the Court, Counsel, I'm Ronald Johnson, Assistant United States Attorney, on behalf of the government. To pick up where the Court left off with Mr. Kimura, specifically the appellate waiver provision isn't challenged by the defendant. And when you look at the specific language in the appellate waiver, when the plea agreement was drafted, it went down to the specific subsection of the sentencing guidelines, and it lists out the fraud loss calculation and the production of counterfeit access devices as two issues the defendant specifically wanted to reserve for purposes of appeal, because he felt he wasn't responsible for the total loss because other people were out there committing transactions, though by his own admission he was the phone guy and had to participate in every transaction because he was manning the 1-800 number, which through social engineering would allow him to convince the merchant to put through a transaction that had been declined. In addition, the defendant reserved the right to contest the production of the credit cards, the credit cards that were at issue for a large portion of the transactions were held by the defendant's girlfriend, Jennifer Titherington. The H&R Block card is one of those cards, and a net spend card is the other. And the numbers track on Exhibit 1, which is part of both the S.E.R. and the defendant's E.R. When you look at those transactions and you go down through how the cards were used, he was claiming that he didn't know or he wasn't responsible for the 1-800 number on the back, but the court found that he was because Titherington's testimony was he would get the number and often hide it in someone else's name like a co-defendant Nakata. The e-mail was to COA. She identified him as COA. And the other co-defendant, Nakata, when testifying, identified him as COA. So he was at the core of all the transactions, and therefore when that number that he applied for was put on the back of the card, even if he didn't do it, a counterfeit access device was created. And the judge properly found he was responsible for that. So the court relied on the spreadsheet and was looking for a couple of different points of corroboration as to each of these losses. And then the defendant introduces the declarations from the merchant saying, no, we didn't suffer a loss. And the district court dismissed that or discarded that, saying, well, these are small companies. They may not have good records. They may not want to appear in court, whatever. Is that sufficient so that with respect to those losses that are disclaimed by the merchants, there's still clear and convincing evidence of those losses? Yes, Your Honor. And the reason is for a number of reasons. Number one, the credit card records show that the particular card used was swiped. The agent could see the merchant involved, could see the date, and could see the amount. So there was at least an attempt made to conduct that transaction at that particular location. And then the two co-defendants, Nakata and Titherington, each testified that they reviewed in detail the chart and they agreed that they had participated in every transaction where their name was listed. And both Nakata and Titherington, with respect to the issue of actual loss, where something was actually obtained from the merchant,  they could tell you what they got and they were present. And it was, in fact, COA, or Eric Ledford, who was on the phone assisting with the transaction by acting as the card services representative. So there was a lot of evidence corroborating each one of the transactions that the court found. And the court did not disregard all of the affidavits or declarations. The court found in two instances, and it's the two instances that defendant raises, the Joy de Vive and the food pantry, I believe it is, the court had the declarations submitted by the defense. And he said, these do not map up with any of the losses that I'm seeing here, so I'm not going to count any losses with respect to those. The court did address the issue of the timing. And the timing of the declarations going out, they occurred approximately two to three years after the transaction. Some of the transactions were back to 2009. So the court looked at that and gave it the weight it thought was appropriate. The merchants, some of whom, as the court can see by the issue raised by a defendant, that the Best Western was in one location, and then Joy de Vive took over that location. Joy de Vive responds, we didn't have a loss. Best Western, there's police reports. There was an actual loss when the card was used for one night and then when Titherington tried to obtain additional nights, police are called and she gets arrested. So there's a lot of corroborating evidence. And the court, on the bold-faced assertion of the document, was not satisfied that that was enough to overcome the credit card records, the direct testimony of the witnesses, the agent's testimony, the corroboration by the use of the phones, the 1-800 number, and in some circumstances the link chart that the agent drew up showing how the defendants communicated with each other to carry out one of their frauds. Am I correct in reading the judge's findings that the judge did not consider any transaction for which Titherington's testimony was the only corroboration? Yes. As a matter of fact, there were two transactions that the court felt were not corroborated, and those were Jake's Action Video and Royal Garden Hotel. And the court specifically stated, and this is where I would argue, that the court was very methodical and didn't just rubber stamp the government's exhibit. One, the court went through it itself and it said, I find that there are two where there is only Titherington's testimony and there doesn't appear to be corroboration by phone or other means. So that didn't meet the clear and convincing standards. That's what he felt at that point, and he disallowed them. And the reason why the total in the chart doesn't map up to the total that the judge found is because he actually subtracted out those two. And in our brief, we went through some of the math to show how what he found, minus those two, is an accurate total for the loss. One of the other things that is important to mention is that every one of the merchants where there was an actual loss, they had these individuals come in, pass a card, the card is declined. Through social engineering, Mr. Ledford convinces them that they're good to go and the transactions sound and they're going to receive payment. They leave with the merchandise. This is, I think, off to one side of the legal point. You've used the term social engineering a couple of times. Does that mean scam? Yes. And by phone, he is calling in and he's convincing them. I understand what he did, but you're just calling him a social engineer? Yes, Your Honor. But what you really mean is scamming. He was defrauding them by lying to them that he was, in fact, a card member services representative. I know what you're charged with doing. It's not a term I'm familiar with. I was familiar with before this. I apologize. That's okay. But the issue is that each one of the merchants had merchandise walk out of their store with the individuals and then when the computer comes back online after the offline transaction or there's an issue about payment with a card, the merchant has actually lost the value of the item and it's not temporary. The merchant would have to be reimbursed or there would have to be issues to settle and if the merchant did an offline transaction, that's not within the system in the normal course of their operation. When Mr. Kimura argues about the loss, he also, there has to be for the attempts. Okay, your time is up, so if you'd like to sum up. Yes, Your Honor. For the attempts, where there is no actual item that walks out the door, it is still because an attempted fraud loss is a loss that's counted by the guidelines. So those were properly included with the court's total. Okay. Thank you. Mr. Kimura, you've got down to one minute. You expressed a desire to have two minutes. Why don't we put two minutes on the clock? Thank you, Your Honor. I just wanted to pick up what the government left off with. The oral ruling by the district court is that they were going to be disallowing the, and based upon the merchant declaration, disallowing the claim of Joy DeVere. In our exhibit list, we did say and did link up Joy DeVere with Best Western Hotel, Coconut Hotel. In the sentence and the restitution list, the judge still put down Best Western Coconut Hotel for $238.50. So in other words, the oral ruling of the judge and what the judge did is directly contrary to what the written judgment is. So there is a defect right there. You're attacking the restitution number then, right? Because even absent that one, you're still over the monetary threshold. Yes, we're still over the monetary threshold, but it is inextricably intertwined between the restitution and the amount of fraud loss. Well, but my question is if you take off the amount of loss, all the things that the judge said I'm disregarding that you think are inappropriately in the restitution list, you're still over the requisite amount of loss to get the enhancement, are you not? Yes, we would still be above, and that's why our argument is that if you take into account the merchant declarations, there needs to be an affirmative statement by the merchant as to whether there is a fraud loss or not. Because of that as well as the case agent's testimony that the victims may not necessarily be those that are listed on the Exhibit 1 chart that they have. So, Your Honor, in summary, I basically would argue that based upon the merchant declarations and the admission by the case agent, that does not meet the clear and convincing burden of proof that is required for the judge to find that there was over or more than 120,000 of fraud loss and more than 50 victims. Our position is it was under 120,000 and it was less than 50 victims. Thank you, Your Honor. Thank you very much. The case of United States v. Ledford is now submitted for decision.
judges: FLETCHER, IKUTA, HURWITZ